1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Gutberto Martinez,                    )    No. CIV 07-1827-PHX-SRB (DKD)
                                          )
10                   Petitioner,          )
                                          )
11  vs.                                   )    **REPORT AND RECOMMENDATION**
                                          )
12  Michael B. Mukasey, Attorney General, )
                                          )
13                   Respondent.          )
                                          )
14  _____ )

15  TO THE HONORABLE SUSAN R. BOLTON, UNITED STATES DISTRICT JUDGE:

16          Gutberto Martinez filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §

17  2241 on September 24, 2007, alleging that his current detention pending the resolution of his

18  applications for cancellation of removal and adjustment of status is unlawful.  Respondent

19  Michael B. Mukasey[1] argues that his continued detention is constitutional.  For the reasons

20  stated below, the Court recommends that Martinez's petition be denied and dismissed with

21  prejudice.

22                              **BACKGROUND**

23          Martinez is a native and citizen of Mexico, admitted to the United States in 1969 as

24  a lawful permanent resident (Doc. #8, Exh 1, 2).  In 1996, he was convicted in California

25  Superior Court of assault with intent to commit rape by force/fear in violation of the

26

27  _____

28          [1]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current United
    States Attorney General, Michael B. Mukasey, is substituted for Alberto R. Gonzales.

California Penal Code, and sentenced to two years in prison (*Id.*, Exh 3). On December 14, 2004, the Department of Homeland Security (the Department) issued a Notice to Appear, charging Martinez with removability for having been convicted of an aggravated felony, a crime of violence, and sexual abuse. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii); 1101(a)(43)(A), (F). At a hearing on February 15, 2005, all but the aggravated felony charge were withdrawn; Martinez admitted the allegations, conceded the charge of removability, and indicated a desire to seek section 212(c) relief (*Id.*, Exh 4, 5).

On December 22, 2004, Martinez was served a Notice of custody Determination, indicating that he was being held without bond (*Id.*, Exh 6). On January 31, 2005, the Department submitted bond exhibits to the immigration judge; on February 15, 2005, the immigration judge held a bond hearing and determined that Martinez was a danger, and denied his request to re-determine bond (*Id.*, Exh 7). Both parties waived appeal. On March 29, 2005, Martinez's 212(c) waiver of inadmissability was granted; the Department waived appeal (*Id.*, Exh 8). Martinez requested a new bond hearing; the immigration judge denied a re-determination in light of the likelihood of reversal of the 212(c) waiver based on new caselaw (*Id.*, Exh 9).[2] The Board of Immigration Appeals (BIA) reversed the grant of section 212 relief and remanded the case back to the immigration judge.

On remand, the immigration judge granted Martinez an adjustment of status in conjunction with a 212 waiver (*Id.*, Exh 13).[3] Although the parties had stipulated that

---

[2] The BIA reversed the immigration judge's grant of a section 212(c) waiver based on a decision issued by the BIA "subsequent to the Immigration Judge's decision that serves as intervening precedent in this case," citing *Matter of Blake*, 23 I&N Dec. 722 (2005) (finding that an alien removable for a conviction for sexual abuse of a minor is not eligible for a 212(c) waiver). *See* Doc. #12, Exh 12.

[3] In granting the combined relief, the immigration judge relied on *Matter of Azurin,* 23 I&N Dec. 695 (2005), where the BIA reaffirmed the eligibility of an alien to seek 212(c) relief in conjunction with an application for adjustment of status, even if his aggravated felony charge does not correspond to a comparable ground of inadmissibility under section 212(a), if the underlying conviction also would render the alien inadmissible. *See Id.*, Exh

Martinez was statutorily eligible for both adjustment of status and 212 relief, the Department argued before the immigration judge that both forms of relief should be denied as a matter of discretion, and appealed his ruling (*Id*., Exh 15, 16).

On May 9, 2006, the immigration judge re-determined Martinez's bail at $15,000; the Department appealed (*Id*., Exh 17, 18, 19).  On May 24, 2006, Martinez paid his bond and was released from custody (*Id*., Exh 20).  On November 29, 2006, the BIA reversed the immigration judge's bond decision, finding it unlikely that the grant of relief in discretion would be upheld on appeal, and that Martinez was a danger to the community (*Id*., Exh 21).  On March 9, 2007, the BIA reversed the decision granting Martinez a 212 waiver, noting that "[w]hile the respondent established a certain level of positive equities, the record as a whole supports a determination that it would not be in the best interests of the United States for a section 212(c) waiver to be granted" (*Id*., Exh 22).  The BIA also concluded that "a similar weighing of the equities leads to a conclusion that adjustment of status should not be granted in the exercise of discretion" (*Id.*).  On March 14, 2007, Martinez was taken into custody (*Id*., Exh 27).  Martinez reserved appeal, but did not file an appeal.  He filed a motion for reconsideration of the  reversal of the adjustment of status and grant of a 212(c)  waiver; the BIA denied his motion and ordered him removed to Mexico (*Id*., Exh 24).  On June 22, 2007, Martinez filed a petition for review in the Ninth Circuit and the court of appeals ordered a temporary stay of removal. *See Martinez-Salgado v. Keisler*, No. 07-72493.  On September 24, 2007, Martinez filed his federal petition.

On September 27, 2207, the court of appeals ordered the temporary stay of removal to continue in effect until the issuance of the mandate or further order of the court.  On December 24, 2007, Martinez was granted a 14-day extension to file his opening brief; on February 20, 2008, the court of appeals granted the Department's request for a 60-day extension to file its answering brief.  On May 27, 2008, the court of appeals granted

---

14 at 2-3.

1   Martinez's request for a 14-day extension to file his reply brief; he filed the brief on June 12,

2   2008.

3                                          **DISCUSSION**

4              During the pending removal proceedings, beginning on March 14, 2007, when

5   Martinez was taken into ICE custody, and continuing today because of his appeal pending

6   before the Ninth Circuit, 8 U.S.C. § 1226(c) governs his detention.  Of the 15 months he has

7   been most recently detained, only *two and one half months* of the time was spent in detention

8   during administrative proceedings.  In *Kim v. Demore*, 538 U.S. 510 (2003), the Supreme

9   Court held that mandatory detention of criminal aliens pursuant to 8 U.S.C. § 1226(c) was

10  constitutional "for the brief period necessary for their removal proceedings."  538 U.S. at

11  512.  The alien's detention in *Kim* lasted six months.  In *Tijani v. Willis*, the Ninth Circuit

12  held that "the authority conferred by § 1226 [applies] to expedited removal of criminal

13  aliens."  430 F.3d 1241.  In *Tijani*, a period of 30 months, including both administrative and

14  court proceedings, was held to be not expeditious.  However, in *Tijani*, two-thirds of the time

15  the alien had been detained was due to the length of the administrative proceedings.[4]

16             In this case, only two and one half months of Martinez's present detention occurred

17  during the administrative proceedings.  In addition, in *Kim*, as in this case, where the alien

18  had conceded deportability, "and hence, [was] subject to mandatory detention under §

19  1226(c)," 538 U.S. at 523, the Supreme Court held that mandatory detention pursuant to §

20  1226(c) was constitutional "for the brief period necessary for [his] removal proceedings."

21  538 U.S. at 512.  In addition, unlike the situation in *Zadvydas v. Davis*, 533 U.S. 678 (2001),

22  where "detention's goal is no longer practically attainable, [and] detention no longer bears

23  a reasonable relation to the purpose for which the individual was committed," 533 U.S. at

24  690, in this case "[s]uch detention necessarily serves the purpose of preventing deportable

25

26  _____

27             [4]"[T]he IJ took almost seven months to issue his decision; the BIA took just short of
    an additional 13 months."  430 F.3d at 1241, n.3 (Tashima, J., concurring).

28                                            - 4 -

criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Kim*, 538 U.S. at 527.   Finally, unlike *Zadvydas*, where the period of detention was "indefinite" and "potentially permanent," 533 U.S. at 690-91, "the detention here is of a much shorter duration," with "a definite termination point." *Kim*, 538 U.S. at 529.  The amount of time Martinez was detained for the administrative proceedings was only two and one half months - much less than the amount of time found permissible in *Kim*, and ten times shorter than the time period in *Tijani*.

The reasons for detention also differ in this case from those in *Tijani*.  In *Tijani*, the alien's detention for almost two and one half years was "not the result of a criminal conviction; nor is it because he faces imminent removal...[but] because the government *may* be able to prove he is subject to removal."  430 F.3d at 1241 (Tashima, J, concurring) (emphasis in original).[5]  In this case, Martinez has *conceded* removability in both his habeas proceedings and in the underlying removal proceedings.  In addition, unlike *Tijani*, where the alien's request for continuances did not justify the unreasonable length of detention, and more importantly, two-thirds of the time he had been detained was due to the length of the administrative proceedings,[6] in this case, the majority of Martinez's detention has occurred *following* the BIA's decision sustaining the Department's appeal, due to Martinez's choice to appeal to the Ninth Circuit.[7]  It did not occur as the result of "an unreasonable delay by the

_____

[5]As Judge Tashima explains, "Tijani was convicted in California of offenses that have *never been found by a court or by the BIA to trigger mandatory detention*... Today, nearly 30 months later, Tijani remains in mandatory detention while courts continue to sort out whether his offenses actually fall within the reach of the mandatory detention statute."  430 F.3d at 1241.  (emphasis added)

[6]"[T]he IJ took almost seven months to issue his decision; the BIA took just short of an additional 13 months."  430 F.3d at 1241, n.3 (Tashima, J., concurring).

[7] In addition, the judicial appeal time (approximately 12 months) is within the norm.  *See Mboussi-Ona v. Crawford*, No. CIV 06-2897-PHX-NVW, 2007WL 3026946, *5 (D.

INS in pursuing and completing deportation proceedings," where "it would become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Kim*, 538 U.S. at 532 (Kennedy, J., concurring).  Finally, the Court finds that the continued detention is neither "unreasonable [n]or unjustified," such that Martinez would be entitled "to an individualized determination as to his risk of flight and dangerousness." *Id.*  He has previously received several individualized bond determinations.  During his present detention, which has been relatively brief, he is not entitled to further hearings.  In addition, the periodic custody reviews he receives, because they are not statutorily required, afford him "more process than the minimum due." *See Rivera v. Crawford*, No. CIV 07-0898-PHX-SRB, 2008 WL 719231 (D. Ariz., March 14, 2008).

**IT IS THEREFORE RECOMMENDED** that Gutberto Martinez's petition for writ of habeas corpus be **denied** and **dismissed with prejudice** (Doc. #1).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.  The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within which to file a response to the objections.  Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to

Ariz., September 27, 2007).

1   appellate review of the findings of fact in an order or judgment entered pursuant to the

2   Magistrate Judge's recommendation.  *See* Rule 72, Federal Rules of Civil Procedure.

3       DATED this 27th day of June, 2008.

4

5

6

7                                       David K. Duncan
                                    United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28